# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| WHITE STALLION ENERGY CENTER, LLC, *ET AL.*, | ) ) ) ) |
| **Petitioners,** | ) ) |
| v. | )   **No. 12-1100 (and consolidated** ) **cases)** |
| ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) |
| **Respondent.** | ) ) |

## STATE, INDUSTRY AND LABOR PETITIONERS' PROPOSED BRIEFING FORMAT AND SCHEDULE FOR CROSS-CUTTING MERCURY/AIR TOXICS STANDARD ISSUES

The States of Michigan, *et al.*[1] ("State Petitioners"), the United Mine

Workers ("UMW"), the National Black Chamber of Commerce, the Institute for

Liberty, West Virginia Chamber of Commerce, *et al.*, the Utility Air Regulatory

Group ("UARG"), and other petitioners signing on to this pleading (collectively

"Industry and Labor Petitioners")[2] hereby propose for the Court's consideration a

---

[1] State Petitioners joining in this filing are the States of Michigan, Alabama, Alaska, Arizona, Arkansas, Florida, Idaho, Indiana, Kansas, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, Texas, Utah, West Virginia, Wyoming, the Commonwealths of Pennsylvania and Virginia, Terry E. Branstad, the Governor of Iowa, on behalf of the people of Iowa, and Jack Conway, Attorney General of Kentucky.

[2] Petitioner Institute for Liberty is not an industry group or trade association, but joins in this filing because of the similarity of issues that this petitioner intends to raise. American Public Power Association ("APPA") represents local governments that own and operate not-for-profit electric utilities such as the

unified format for briefing the consolidated challenges to the Mercury and Air Toxics Standards ("MATS") rule.[3]  The MATS rule is the culmination of rulemakings spanning over two decades.

Under Clean Air Act ("CAA") § 307(b)(1), 42 U.S.C. § 7607(b)(1),[4] Congress gave those affected by rules like the MATS rule the right to pre-enforcement judicial review in this Court.  Whether or not that right will be realized depends upon petitioners being able to brief fully their objections to the rules.  Because petitioners in these cases could be foreclosed from challenging the MATS rule in criminal or civil enforcement actions, fundamental fairness requires that petitioners be given words sufficient to be heard by this Court on their objections.  This proposal represents State, Industry and Labor Petitioners' best effort to identify the minimum number of words that will be required for those groups of petitioners to brief the "cross-cutting" issues raised by the rule.  Other industry petitioners are separately identifying the minimum words required to brief issues of unique interest to them.  All petitioners will coordinate, in an effort to

---

Kansas City Board of Public Utilities, but both also are grouped with "Industry Petitioners" for purposes of this filing.

[3] National Emissions Standards for Hazardous Air Pollutants from Coal- and Oil-Fired Electric Utility Steam Generating Units, 77 Fed. Reg. 9304 (Feb. 16, 2012).

[4] Hereinafter, for the sake of brevity, all statutory cites are to the appropriate section of the CAA, with no parallel cite to the U.S. Code.

avoid duplication of argument.[5]

This unified briefing format is consistent with the formats adopted by this Court in other complex cases. It is designed to ensure prompt and efficient review of all legal and record-based challenges to the MATS rule that are now ripe for review. This proposal does not include briefing of (i) New Source Performance Standards for Electric Utility Steam Generating Units ("EGU NSPS") issues,[6] (ii) the additional issues identified in paragraphs 16-17 that UARG has proposed to sever or to hold in abeyance, or (iii) the issues proposed to be severed from this case by the New Unit Developers.[7]

The Environmental Protection Agency ("EPA"), environmental group

---

[5] Estimating the number of words needed for briefing in a complex case like this with numerous petitioners is a difficult task. Briefs have not been written and the large number of Petitioners means that joint briefing will require sufficient words to accommodate diverse positions. As a result, and in all respects, Petitioners do not believe that EPA has any basis for suggesting the number of words that Petitioners will need to brief adequately their issues.

[6] As explained in paragraph 15, UARG is moving to deconsolidate and hold in abeyance case no. 12-1166, which raises NSPS issues. To the extent a State or another Industry Petitioner wishes to brief now any issue regarding the EGU NSPS rule, that request will be addressed separately.

[7] New Unit Developers are Petitioners White Stallion Energy Center, LLC; Deseret Electric Power Coop.; Sunflower Electric Power Corp.; Tri-State Generation & Transmission Ass'n, Inc.; Tenaska Trailblazer Partners LLC; and Power4Georgians, LLC. New Unit Developers have moved to sever certain issues unique to new units. *See* Joint Motion by Developers of New Solid-Fueled Electric Generating Units to Sever and Expedite Consideration of Issues Germane to Hazardous Air Pollutant Standards Applicable to New Units (filed April 27, 2012) (Doc. No. 1371309). New Unit Developers have not joined in this briefing proposal. If New Unit Developers' pending motion to sever and expedite is denied, additional words will be needed to address their new unit issues.

petitioners, and certain intervenor-respondents disagree with certain elements of this proposal and will file their own proposals.   In support of this briefing proposal, State, Industry and Labor Petitioners state as follows:

**I.**     **Background**

1.     The MATS rulemaking is one of the largest and most complex proceedings ever undertaken by EPA.  Shortly after the enactment of the 1990 CAA Amendments, EPA started collecting information on hazardous air pollutant ("HAP") emissions from fossil-fuel-fired electric utility steam generating units ("EGUs") to inform the Utility Study it was required to produce under CAA § 112(n)(1)(A).  EPA issued the Utility Study in February 1998 and, following release of that study, then-Administrator Carol Browner in late 2000 published a Federal Register notice finding that regulation of mercury emissions from EGUs was "appropriate" and "necessary" under CAA § 112(n)(1)(A).  Administrator Browner also listed EGUs for regulation under the maximum achievable control technology provisions ("MACT") of CAA § 112(c) and (d).  This § 112(n)(1)(A) finding was followed by a multi-year rulemaking culminating in a determination in March 2005 that regulation of EGU mercury emissions under CAA § 112 was neither "necessary" nor "appropriate."  70 Fed. Reg. 15,994 (Mar. 29, 2005). Instead, EPA regulated mercury emissions under CAA § 111.  In February 2008, the D.C. Circuit found that EPA had applied the wrong statutory criteria in

removing EGUs from the list of major sources under CAA § 112(c), and sent the proceeding back to EPA without reaching any of the other legal or record-based issues addressed and resolved in that rulemaking. *New Jersey v. EPA*, 517 F.3d 574 (D.C. Cir. 2008). Now, EPA has reversed course and found that regulation of mercury and other EGU HAP emissions under CAA § 112 is "necessary" and "appropriate," and has set complex MACT standards for all HAPs emitted by coal- and oil-fired EGUs.

2.     Over the course of the last 20 years, EPA has produced more than 100 technical studies, conducted two complete rulemaking proceedings, and received thousands of detailed legal and technical comments. UARG alone has filed thousands of pages of comments, analyses, and technical studies during the course of these proceedings. Not surprisingly, given the length and complexity of this process and associated record, the nonbinding issue statements filed last month in this case raise 174 issues for which petitioners seek review by this Court. While there is overlap between many of the issues, many issues are discrete and other issues are raised only by certain petitioners.

3.     The MATS rule is one of the most expensive rules ever promulgated by EPA. By EPA's own estimation, compliance costs associated with the MATS

rule are approximately $9.6 billion per year.[8]  Recent analyses show the costs will be substantially higher.[9]  But even under EPA's own estimate, the MATS rule is extraordinarily expensive and will have a substantial impact on the electricity rates paid by families, states, and businesses.  Beyond compliance costs, many existing units are threatened with shutdown due to the infeasibility of retrofitting mandated controls within the extremely tight deadlines imposed by the rule, potentially affecting electric reliability in parts of the country.  As explained in the motion to sever filed by New Unit Developers, the rule's new source emission limits are so stringent that pollution control equipment vendors are unable to offer guarantees.[10]  Prompt resolution of this action is needed to avoid substantial injury to State, Industry and Labor Petitioners and the public and to allow new units to be built.

4.      Existing EGUs face the same need for prompt resolution of this action.  The MATS rule's aggressive deadlines[11] require that hundreds of existing EGUs retrofit complex and extensive flue gas desulfurization, selective catalytic

---

[8] EPA Fact Sheet: Mercury and Air Toxics Standards, Benefits and Costs of Cleaning Up Toxic Air Pollution from Power Plants at 2 (Dec. 21, 2011), *available at* http://www.epa.gov/mats/pdfs/20111221MATSimpactsfs.pdf.

[9] *See, e.g.,* NERA Economic Consulting, "An Economic Impact Analysis of EPA's Mercury and Air Toxics Standards Rule" at 1-3 (Mar. 1, 2012) (attached as Ex. 1).

[10] *See, e.g.,* Testimony by Ralph E. Roberson, RMB Consulting & Research, Inc. to the House Subcommittee on Energy and Power of the House Committee on Energy and Commerce at 4 (Feb. 8, 2012) (attached as Ex. 2).

[11] The compliance deadline is April 16, 2015, unless a source obtains a one-year extension to April 16, 2016.  *See* 77 Fed. Reg. at 9409-10.

reduction, and baghouse technologies, all within three years.  Given the years it

takes to engineer, procure, install, and test these new controls,[12] companies must

begin planning and engineering immediately, and all affected EGUs will likely

enter the construction phase simultaneously.  No previous regulatory program has

required hundreds of EGUs to undertake retrofits at the same time, and EGUs

subject to the rule cannot be successfully retrofitted concurrently while

maintaining the reliability of the electricity supply.[13]

    5.    For this reason, the North American Electric Reliability Corporation

("NERC"), which is statutorily responsible for overseeing electric reliability, has

identified EPA rulemakings, including specifically the MATS rule, as "the number

one risk to reliability over the next 1 to 5 years."  NERC, *2011 Long-Term

Reliability Assessment* at 73 (Nov. 2011).[14]  Many companies have already

---

[12]  EPA, EPA's Response to Public Comments on EPA's *National Emission
Standards for Hazardous Air Pollutants from Coal- and Oil-Fired Electric Utility
Steam Generating Units*, Vol. 2 at 315-16 (Dec. 21, 2011) ("RTC"), Doc. ID No.
EPA-HQ-OAR-2009-0234-20126 (summarizing comments on timelines for
control equipment installation).

[13] *See id.* at 306, 315-16; *infra*, at ¶ 3.

[14] *Available at* http://www.nerc.com/files/2011LTRA_Final.pdf.  *See also In
re* Reliability Technical Conference, Federal Energy Regulatory Commission
("FERC Tech. Conf. Tr.") at 186 (Nov. 30, 2011) (testimony of Carl Monroe,
Southwest Power Pool), *available at* http://www.ferc.gov/EventCalendar/Files/
20111208072529-AD12-1-11-30-11.pdf (noting need for more time for utilities
and planning authorities to develop compliance and mitigation plans, refine them,
coordinate with neighboring planning authorities, and finally, to implement them);
Testimony of Mark Lauby, NERC ("Lauby Testimony"), FERC Tech. Conf. Tr. at
173-75 (similar).

announced plans to retire units as a result of EPA regulations, including the MATS rule.  As of mid-April, the Institute for Energy Research, which maintains a tally of announced retirements, reported that 33.8 GW of retirements had already been announced.[15]  Most remaining units will have to be taken off-line to install necessary control technology, further threatening electric reliability.[16]

## II.   Petitioners' Proposed Briefing Format for Cross-Cutting MATS Issues

6.     Given the number of parties to this case, the importance of prompt review, the large number of issues raised, and the inter-related nature of the issues presented by the numerous challenges to the rule (including new and existing source issues), State, Industry and Labor Petitioners propose the briefing format and schedule described below and set forth in the table that follows.  This proposal promotes judicial economy and prompt resolution of ripe challenges to this rule.

7.     Petitioners in this case include the following distinct groups of parties: (i) 24 states (State Petitioners) concerned with the severe impact the rule would have on commercial, industrial, residential and governmental users of electricity within those states; (ii) Industry and Labor Petitioners joining in this proposal, all

_____

[15] Institute for Energy Research, "Impact of EPA's Regulatory Assault on Power Plants:  New Regulations to Take 34 GW of Electricity Generation Offline and the Plant Closing Announcements Keep Coming" (Apr. 20, 2012) (attached as Ex. 3 and *available at* http://www.instituteforenergyresearch.org/wp-content/uploads/2012/04/Power-plants-to-close-because-of-EPAs-regs-April-20-update.pdf).

[16] Lauby Testimony, FERC Tech. Conf. Tr. at 174-75.

of whom are concerned that the rule is unachievable and otherwise inconsistent

with law; (iii) additional industry and organizational petitioners who will challenge

certain distinct aspects of the rule apart from the cross-cutting issues proposed to

be addressed by the State Petitioners and Industry and Labor Petitioners joining

this filing; and (iv) certain environmental organizations and aligned interests who

will likely argue that the rule is not stringent enough ("Environmental

Petitioners").[17]  Under the proposed format, State Petitioners, Industry and Labor

Petitioners, and Environmental Petitioners would each file an opening brief

addressing cross-cutting legal issues, as discussed below.  State, Industry and

Labor Petitioners will coordinate to minimize any duplication of argument.  In

addition, a number of individual company and organizational petitioners (and New

Unit Developers, if their issues are not severed) will file justifications for separate

opening briefs (and corresponding reply briefs) to address distinct issues not joined

by all Industry and Labor Petitioners.  With the exception of the issues identified in

paragraphs 15-17 below, these proposed briefs would cover all of the 153 issues

identified by State, Industry and Labor Petitioners in their Nonbinding Statements

of Issues.

### A.    <u>State Petitioners' Brief</u>

8.    The State Petitioners have distinct interests and responsibilities that

---

[17] These petitioners include Sierra Club, Chesapeake Climate Action
Network, Conservation Law Foundation, and Environmental Integrity Project.

differ from those of Industry and Labor Petitioners.  Under the CAA, "air pollution

control at its source is the primary responsibility of states and local governments."

CAA § 101(a)(3).  In fulfilling this responsibility, the states must balance

competing environmental, energy and economic concerns in implementing the

CAA's regulatory programs.  This includes protecting the reliability of local

electricity supplies, which is critical to public health and safety, and ensuring fair

and reasonable electricity rates.  The states are also responsible for issuing permits,

as a result of the MATS rule, for:  (i) retrofit of necessary control technologies;

(ii) construction of necessary replacement capacity; (iii) construction of new

transmission facilities to address the extensive EGU retirements that are resulting

from this rule; and (iv) the one-year compliance extension program under the rule.

9.    Reflecting their unique interests and perspective, State Petitioners'

arguments will differ from those presented by Industry and Labor Petitioners.

Among the issues that State Petitioners intend to brief are:  (i) whether EPA's

finding that regulating HAPs from EGUs is "appropriate and necessary" under

CAA § 112(n)(1)(A) is unlawful because EPA failed to adequately consider the

impact of the MATS rule on the reliability of the electricity supply (2,500 words);

(ii) whether EPA's "appropriate and necessary" finding is unlawful because EPA

failed to adequately consider the costs and economic impact of the MATS rule

(3,000 words); (iii) whether EPA unlawfully failed to adequately consider HAP

10

emissions from EGUs after imposition of the requirements of the CAA in making

its "appropriate and necessary" finding (2,500 words); (iv) whether EPA's decision

to ignore state- and source-specific conditions affecting HAP emissions for

individual sources in a state, and instead to base the emission limits in the MATS

rule on a combination of different HAP pollutant emission levels achieved at

different sources in different states, violates CAA § 112(d)(3) (2,000 words);

(v) whether EPA violated CAA § 112(d)(3) by (a) setting certain emission limits at

levels where emissions cannot be accurately measured to demonstrate compliance,

and (b) arbitrarily excluding emissions data from its analysis (2,000 words); and

(vi) whether EPA acted arbitrarily and capriciously or otherwise not in accordance

with law by promulgating an affirmative defense provision that differs

significantly from state provisions, without addressing or reconciling those

differences (2,000 words).

### B.     Industry and Labor Petitioners' Brief

10.     In contrast to State Petitioners, companies affected by the rule own

and operate the facilities required to comply with the rules, and are subject to

enforcement action by states and EPA for noncompliance.  Due to the

extraordinarily tight deadlines for compliance with the rule, these companies are

now engaged in analyzing and planning what facilities to retire, what facilities to

retrofit, and what facilities to repower.  These petitioners will, in many instances,

have to apply to states for permits, and will have to apply to states and EPA for compliance extensions or administrative compliance orders. As a result, Industry and Labor Petitioners' interests are different from those of State Petitioners.

11. Reflecting this difference of interests, Industry and Labor Petitioners plan to address a number of legal issues and present arguments that are distinct from those presented by State Petitioners. These include: (i) whether EPA's finding that it is "appropriate and necessary" to regulate EGUs under § 112(n)(1)(A) is arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law, because (a) EPA's latest interpretation of the meaning and purpose of CAA § 112(n)(1)(A) and the statutory terms "appropriate" and "necessary" is unlawful (2,000 words), (b) EPA has offered insufficient factual support for its finding that EGU HAP emissions pose risks to public health that warrant regulation under § 112 (1,000 words), (c) EPA has improperly relied on environmental effects to make an affirmative regulatory finding under § 112(n)(1)(A) (1,000 words), (d) EPA's conclusion that an affirmative regulatory determination under § 112(n)(1)(A) compelled EPA to list EGUs under § 112(c) and then to set MACT standards under § 112(d) was unlawful (1,000 words), and (e) EPA's decision that a finding of a public health concern for one HAP under § 112(n)(1)(A) obligated EPA to set emission limits for all HAPs emitted by EGUs was unlawful (1,000 words); (ii) assuming EPA had authority to set MACT

standards under § 112(d), (a) whether the record for EPA's decisions setting

emission limits for existing sources satisfies the § 112(d)(3) criteria that MACT

standards reflect emission levels "achieved" by similar sources, or are otherwise

arbitrary, capricious or contrary to law (3,000 words), (b) whether EPA's decision

refusing to set area source limits for EGUs and in failing to create a separate

subcategory for those area sources is lawful (1,500 words), and (c) whether EPA's

decision refusing to set an alternative health-based limit under CAA § 112(d)(4)

for acid gas emissions is lawful (1,500 words); (iii) whether EPA's compliance

deadline for existing EGUs was arbitrary, capricious, and otherwise not in

accordance with law (1,000 words); and (iv) whether EPA violated the

requirements of CAA § 307(d) when it established definitions for startup and

shutdown and other requirements in the final MATS rule (1,000 words).

## C.    **Additional Petitioner-Specific Briefs**

12.    Certain company and organizational petitioners plan to brief issues in

which other petitioners may not join and that do not affect other petitioners

equally.  These petitioners include:  APPA (No. 12-1173), ARIPPA (No. 12-1181),

Chase Power Development LLC (No. 12-1191), FirstEnergy Generation

Corporation (12-1192), Gulf Coast Lignite Council (No. 12-1188), Kansas City

Board of Public Utilities (No. 12-1186), Oak Grove Management Company LLC

(No. 12-1187), Puerto Rico Electric Power Authority (No. 12-1189), Tri-State

Generation and Transmission Association, Inc. (12-1178), and Wolverine Power Supply Cooperative, Inc. (12-1195).[18]  An additional allocation of words should be made to allow these petitioners to present their distinct issues in a separate brief or briefs.  These issues are addressed in supplemental justifications for issue-specific brief(s) identifying those petitioner-specific issues and addressing the words needed to brief those issues adequately.

13.    Because these supplemental justifications address issues that are distinct from those covered by the cross-cutting issue briefs addressed in paragraphs 8-11, the Court should address independently the word allocations for the cross-cutting and Petitioner-Specific issue briefs.  Petitioners will coordinate to ensure no duplication of argument.

### D.    <u>Intervenor and Amicus Participation</u>

14.    Certain industry petitioners have moved to intervene as respondents on behalf of EPA and in opposition to the petitions filed by Environmental Petitioners.  Certain state/local governments and environmental organizations have moved to intervene as respondents on behalf of EPA and in opposition to challenges brought by State, Industry and Labor Petitioners.  It is likely that other organizations will request leave to participate as amici on behalf of either EPA or State, Industry and Labor Petitioners.  Consistent with the rules of this Court, and

---

[18] Petitioners understand that Eco Power Solutions (USA) Corporation will propose to file one brief covering its MATS and non-deferred NSPS issues.

its practice in other complex litigation, separate briefs would be provided for each

of these amici or respondent-intervenor groups.

### E.    Issues To Be Held in Abeyance or Deferred

15.    Certain Industry and Labor Petitioners have sought to sever certain

challenges that are distinct from Industry and Labor Petitioners' challenges to the

MATS rule, and certain issues that Petitioners believe may be resolved through

other means.  First, UARG has sought to deconsolidate and hold in abeyance case

No. 12-1166, which challenges only EPA's final EGU NSPS.  Motion to

Deconsolidate and Hold Case in Abeyance (filed June 8, 2012).  Although EPA

published the EGU NSPS in the same *Federal Register* notice as the MATS rule,

the rules were promulgated under different statutory authority (CAA § 111, as

opposed to CAA § 112), have different records, and establish completely separate

standards.  The issues raised by UARG were not raised by any other petitioner and

are all subject to a request for administrative reconsideration.  For the reasons set

out in the motion, UARG believes briefing of those issues should be deferred.

16.    Similarly, UARG has sought to sever and hold in abeyance issues

related to EPA's final action denying UARG's Petition for the De-Listing of Coal-

Fired Electric Utility Steam Generating Units as a Source Subject to Section 112 of

the Clean Air Act ("De-Listing Petition").  Motion to Sever Challenge to EPA's

Denial of the De-Listing Petition and Hold New Case in Abeyance (filed June 8,

2012).  Although UARG, in case No. 12-1147, challenged both the MATS rule and EPA's denial of the De-Listing Petition, the two are separate final actions and are governed by different statutory criteria.  *Id.*  For the reasons set out in that motion, UARG believes briefing of the issues in that challenge should be deferred.

17.      Finally, UARG has sought to sever and hold in abeyance certain issues raised in UARG's Petition for Reconsideration of the MATS rule.  Motion to Sever Certain Issues in UARG's MATS Reconsideration Petition and Hold New Case in Abeyance (filed June 8, 2012).  For the reasons set out in that motion, UARG believes briefing of those issues should be deferred.

18.      Because Industry and Labor Petitioners anticipate these motions will be granted, these challenges and issues are not reflected in the briefing format and schedule presented below.  If these motions are not granted, additional briefs or words will be necessary to cover these challenges and issues.

19.      Finally, while a number of administrative petitions for reconsideration have been filed, the legal and record challenges to the final rule described above are ripe for review now and (except as described above) should be resolved consistent with the schedule described below.  The petitions for reconsideration do not affect a rule's finality for purposes of judicial review or otherwise stay the rule's effectiveness.  CAA § 307(b)(1), (d)(7)(B).  Because the deadlines for MATS rule compliance are running, any delay in briefing these petitions for

review would force affected sources to undertake expensive measures to attempt to comply with a rule that they believe is unlawful.[19]

20.    In this regard, EPA recently argued strenuously in favor of such an approach in Case No. 11-1302, the litigation over EPA's Cross State Air Pollution Rule ("Transport Rule"). In that case, EPA asserted that "it is not necessary to wait for EPA action on the … pending reconsideration petitions to adjudicate Petitioners' challenges to the Transport Rule."[20] EPA stressed that the "Clean Air Act expressly provides that the pendency of petitions for reconsideration does not affect the rule's finality for purposes of judicial review" and, as a result, "Petitioners' challenges to the Transport rule can and should be adjudicated now." *Id.* at 9. EPA concluded that, "when EPA takes final action … on the reconsideration petitions, such action will be subject to judicial review in its own right to the extent the result is adverse to the Petitioners." *Id.* at 9-10. EPA's

---

[19] Certain of the petitioners here, and other entities that have not filed petitions to review but have filed petitions for administrative reconsideration under CAA § 307(d), have asked EPA for prompt resolution of administrative reconsideration petitions, to allow any additional judicial review proceedings that might be needed to proceed promptly. Request of the Utility Air Regulatory Group for Expedited Review of Petitions for Reconsideration of the "National Emission Standards for Hazardous Air Pollutants from Coal- and Oil-Fired Electric Utility Steam Generating Units" (Feb. 16, 2012), and for Administrative Stay Pending Reconsideration, filed with EPA on May 29, 2012.

[20] EPA's Proposed Briefing Format and Schedule at 9, *EME Homer City Generation, L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Jan 17, 2012) (Doc. No. 1353024).

arguments apply with equal force here.

### F.     **Petitioners' Proposed Briefing Format and Schedule**

21.     For these reasons, State, Industry and Labor Petitioners respectfully suggest that, in the interest of judicial economy and orderly resolution of this case, the Court adopt the following briefing format and schedule.  The number of words/briefs proposed herein is necessary to obtain judicial review of the numerous issues raised in this complex case, as discussed above.  In other complex regulatory challenges that involved a simpler and/or smaller set of issues, this Court has granted word allocations well in excess of standard brief length.[21]

### UNIFIED PROPOSAL FOR MATS BRIEFING[22]

| Documents | Due Date | Word Limits |
|---|---|---|
| Petitioners' Opening Briefs | **60 days after issuance of briefing order** | • Opening Briefs of Industry and Labor Petitioners and State Petitioners (Michigan, *et al.*) <br> --Two briefs not to exceed a total of 28,000 words in aggregate <br> • Opening Brief(s) Addressing Petitioner-Specific Issues <br> -- One or more briefs (15,000 words in |

---

[21] *See, e.g.,* Briefing Order, *North Carolina v. EPA*, No. 05-1244 (and consolidated cases) (D.C. Cir. Dec. 21, 2006) (Doc. No. 1012411) (providing 7 opening briefs for petitioners and their amici, totaling 52,600 words) (Ex. 4); Briefing Order, *New Jersey v. EPA*, No. 05-1097 (and consolidated cases) (D.C. Cir. Nov. 29, 2006) (Doc. No. 1007568) (providing 8 opening briefs for petitioners totaling 43,000 words) (Ex. 5); Briefing Order, *Michigan v. EPA*, No. 98-1497 (and consolidated cases) (D.C. Cir. Mar. 19, 1999) (providing 11 opening briefs for petitioners and their amici, totaling 42,250 words) (Ex. 6).

[22] This proposal does not reflect briefing of the challenges and issues described in paragraphs 15-17.

| Documents | Due Date | Word Limits |
|---|---|---|
| | | aggregate, as provided in separate briefing justifications)[23]<br>• Opening Brief(s) of Environmental Petitioners:<br>-- Separate justifications to be provided |
| Briefs of *Amici* in Support of Petitioners | **7 days after Petitioners' opening briefs are due** | • One brief in support of State and/or Industry and Labor Petitioners -- 7,000 words |
| EPA's Brief | **60 days after Petitioners' opening briefs are due** | • Same number of words as Petitioners' Opening Briefs in aggregate |
| Respondent-Intervenors' Joint Briefs | **21 days after Respondents' brief is due** | • One brief for Industry and Labor Respondent Intervenors (in response to Environmental Petitioners' brief)<br>• One or more briefs for Environmental, Governmental Respondent and Other Industry-Intervenors and *Amici* (in response to State, Industry and Labor Petitioners' briefs)<br>• Respondent-Intervenors' briefs not to exceed number of words proportionate to what is allowed for intervenor's brief under FRAP relative to principal petitioners' brief(s) to which intervenors respond (i.e., 8,750/14,000) |
| Petitioners' Reply Briefs | **21 days after Respondent-Intervenors' briefs are due** | • Reply Briefs -- Briefs not to exceed one-half of word allocation for opening briefs |
| Deferred Joint Appendix | **7 days after Petitioners' reply briefs** | N/A |

---

[23] In addition, Industry and Labor Petitioners understand that Eco Power Solutions will seek one brief for its MATS issues and any non-deferred NSPS issues. The word allocations in the table above do not include any request that Eco Power Solutions may make in its own, separately-filed briefing proposal.

| Documents | Due Date | Word Limits |
|-----------|----------|-------------|
| (JA) | **are due** | |
| Final Briefs | **7 days after JA is due** | N/A |

### CONCLUSION

For the foregoing reasons, State Petitioners and Industry and Labor

Petitioners respectfully request that the Court adopt the briefing format and

schedule proposed herein.

Dated:  June 8, 2012     Respectfully submitted,

/s/ F. William Brownell    /s/ Neil D. Gordon
F. William Brownell     Bill Schuette
Lauren E. Freeman     Attorney General
Lee B. Zeugin      John J. Bursch
Elizabeth L. Horner – Admitted only in Solicitor General
 Virginia; application pending in D.C. S. Peter Manning
HUNTON & WILLIAMS LLP   Neil D. Gordon
2200 Pennsylvania Avenue, N.W.  Brian J. Negele
Washington, D.C. 20037   Assistant Attorneys General
(202) 955-1555     Environment, Natural Resources, and
bbrownell@hunton.com   Agriculture Division
lfreeman@hunton.com   Office of the Attorney General of
lzeugin@hunton.com    Michigan
ehorner@hunton.com    525 W. Ottawa Street
        P.O. Box 30755
*Counsel for Utility Air Regulatory* Lansing, MI 48909
*Group*, No. 12-1147    (517) 373-7540
        manningp@michigan.gov
        gordonnl@michigan.gov
        negeleb@michigan.gov

        *Counsel for the State of Michigan*, No.
        12-1196

/s/ Peter S. Glaser
Peter S. Glaser
George Y. Sugiyama
Michael H. Higgins
TROUTMAN SANDERS LLP
401 Ninth Street, N.W.
Suite 1000
Washington, D.C. 20004
(202) 274-2998
peter.glaser@troutmansanders.com

*Counsel for National Mining Association*, No. 12-1101

/s/ Mark Walters
Greg Abbot
Attorney General of Texas
Daniel T. Hodge
First Assistant Attorney General
John B. Scott
Deputy Attorney General for Civil Litigation
Jon Niermann
Chief, Environmental Protection Division
Mark Walters
Assistant Attorney General
Mary E. Smith
Assistant Attorney General
Office of the Attorney General of Texas
Environmental Protection Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2012
Mark.Walters@oag.state.tx.us
Mary.Smith@oag.state.tx.us

*Counsel for the State of Texas, Texas Commission on Environmental Quality, Texas Public Utility Commission, and Railroad Commission of Texas*, No. 12-1185

/s/ David B. Rivkin, Jr.
David B. Rivkin, Jr.
Lee A. Casey
Mark W. Delaquil
Andrew M. Grossman
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
(202) 861-1500
drivkin@bakerlaw.com
lcasey@bakerlaw.com
mdelaquil@bakerlaw.com
agrossman@bakerlaw.com

*Counsel for National Black Chamber of Commerce and Institute for Liberty*, No. 12-1102

/s/ Kendra Akin Jones
Kendra Akin Jones
Assistant Attorney General
Charles L. Moulton
Senior Assistant Attorney General
Arkansas Attorney General
323 Center Street, Suite 400
Little Rock, AR 72201
(501) 682-2007
kendra.jones@arkansasag.gov
charles.moulton@arkansasag.gov

*Counsel for the State of Arkansas, ex rel. Dustin McDaniel, Attorney General*, No. 12-1190

/s/ Lauren E. Freeman
F. William Brownell
Lauren E. Freeman
Craig S. Harrison
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1555
bbrownell@hunton.com
lfreeman@hunton.com
charrison@hunton.com

*Counsel for Utility Air Regulatory Group*, No. 12-1166

/s/ Luther Strange
Luther Strange
Attorney General
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7445

*Counsel for the State of Alabama*, No. 12-1196

/s/ David M. Flannery
David M. Flannery
Gale Lea Rubrecht
Kathy G. Beckett
Edward L. Kropp
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322-553
(304) 340-1000
dmflannery@jacksonkelly.com
galelea@jacksonkelly.com
kbeckett@jacksonkelly.com
skropp@jacksonkelly.co

*Counsel for Midwest Ozone Group*, No. 12-1172

/s/ Steven E. Mulder
Michael C. Geraghty
Attorney General
Steven E. Mulder
State of Alaska
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501-1994

*Counsel for the State of Alaska*, No. 12-1196

23

/s/ Leslie Sue Ritts
Leslie Sue Ritts
RITTS LAW GROUP, PLLC
The Carriage House
620 Fort Williams Parkway
Alexandria, VA 22304
(703) 823-2292
LSRitts@rittslawgroup.com

*Counsel for American Public Power
Association*, No. 12-1173


/s/ Peter S. Glaser
Peter S. Glaser
George Y. Sugiyama
Michael H. Higgins
TROUTMAN SANDERS LLP
401 Ninth Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 274-2998
peter.glaser@troutmansanders.com

*Counsel for Peabody Energy
Corporation*, No. 12-1175


/s/ Katherine L. Vaccaro
Bart E. Cassidy
Katherine L. Vaccaro
MANKO, GOLD, KATCHER & FOX, LLP
401 City Avenue, Suite 500
Bala Cynwyd, PA  19004
(484) 430-5700
bcassidy@mgkflaw.com
kvaccaro@mgkflaw.com

*Counsel for ARIPPA*, No. 12-1181


/s/ Joseph P. Mikitish
Thomas Horne
Arizona Attorney General
Joseph P. Mikitish
James T. Skardon
Assistant Attorneys General
Environmental Enforcement Section
1275 West Washington
Phoenix, AZ 85007
(602) 542-8553
Joseph.mikitish@azag.gov

*Counsel for the State of Arizona*, No.
12-1196


/s/ Jonathan A. Glogau
Pamela Jo Bondi
Attorney General of Florida
Jonathan A. Glogau
The Capitol, PL-01
Tallahassee, FL 32399-1050

*Counsel for the State of Florida*, No. 12-
1196


/s/ Lawrence G. Wasden
Lawrence G. Wasden
Idaho Attorney General
PO Box 83720
Boise, ID 83720-0010

*Counsel for the State of Idaho*, No. 12-
1196

/s/ David M. Flannery
David M. Flannery
Gale Lea Rubrecht
Kathy G. Beckett
Edward L. Kropp
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322-553
(304) 340-1000
dmflannery@jacksonkelly.com
galelea@jacksonkelly.com
kbeckett@jacksonkelly.com
skropp@jacksonkelly.com

*Counsel for West Virginia Chamber of Commerce, Inc., Georgia Association of Manufacturers, Inc., Indiana Chamber of Commerce, Inc., Indiana Coal Council, Inc., Kentucky Chamber of Commerce, Inc., Kentucky Coal Association, Inc., North Carolina Chamber, Ohio Chamber of Commerce, Pennsylvania Chamber of Business and Industry, Pennsylvania Coal Association, South Carolina Chamber of Commerce, The Virginia Chamber of Commerce, The Virginia Coal Association, Incorporated, West Virginia Chamber of Commerce, West Virginia Coal Association, Inc., and Wisconsin Industrial Energy Group, Inc.*, No. 12-1182

/s/ Valerie Tachtiris
Gregory F. Zoeller
Indiana Attorney General
Valerie Tachtiris
Deputy Attorney General
Office of the Attorney General
IGC-South, Fifth Floor
302 West Washington St.
Indianapolis, IN 46204
(317) 232-6290
Valerie.Tachtiris@atg.in.gov

*Counsel for the State of Indiana*, No. 12-1196

/s/ Eugene M. Trisko
Grant Crandall
Arthur Traynor, III
UNITED MINE WORKERS OF AMERICA
18354 Quantico Gateway Drive
Suite 200
Triangle, VA 22172
(703) 291-2457
gcrandall@umwa.org
atraynor@umwa.org

Eugene M. Trisko
LAW OFFICES OF EUGENE M. TRISKO
PO Box 47
Glenwood, MD 21738
(301) 639-5238
emtrisko@earthlink.net

*Counsel for United Mine Workers of America*, No. 12-1183

/s/ Jeffrey A. Chanay
Derek Schmidt
Attorney General of Kansas
Jeffrey A. Chanay
Deputy Attorney General, Civil
Litigation Division
Office of the Attorney General of
Kansas
120 SW 10th Avenue, 3rd Floor
Topeka, KS 66612-1597
(785) 368-8435
derek.schmidt@ksag.org
jeff.chanay@ksag.org

*Counsel for the State of Kansas*, No. 12-1196

/s/ Dennis Lane
Dennis Lane
STINSON MORRISON HECKER LLP
1775 Pennsylvania Ave., N.W.,
Suite 800
Washington, D.C. 20006-4605
(202) 785-9100
dlane@stinson.com

Parthenia B. Evans
STINSON MORRISON HECKER LLP
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Phone:  (816) 842-8600
pevans@stinson.com

*Counsel for Kansas City Board of Public Utilities*, No. 12-1186

/s/ Harold E. Pizzetta III
Harold E. Pizzetta III
Assistant Attorney General
Director, Civil Litigation Division
550 High Street, Suite 1100
Post Office Box 220
Jackson, MS 39205-0220
(601) 359-3816
hpizz@ago.state.ms.us

*Counsel for the State of Mississippi*, No. 12-1196

/s/ John C. Hayes, Jr.
Scott M. Turner
John C. Hayes, Jr.
NIXON PEABODY LLP
401 Ninth Street N.W.
Suite 900
Washington, D.C. 20004
(202) 585-8000
sturner@nixonpeabody.com
jhayes@nixonpeabody.com

*Counsel for Puerto Rico Electric Power Authority*, No. 12-1189

/s/ James R. Layton
Chris Koster
Attorney General
James R. Layton
Solicitor General
PO Box 899
Jefferson City, MO 65102
(573) 751-1800
James.Layton@ago.mo.gov

*Counsel for the State of Missouri*, No. 12-1196

27

/s/ Christopher C. Thiele
John A. Riley
Christopher C. Thiele
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Ste. 2300
Austin, TX 78701-4061
(512) 542-2108
John.riley@bgllp.com
Chris.thiele@bgllp.com

*Counsel for Chase Power Development, LLC*, No. 12-1191


/s/ Paul D. Clement
Paul D. Clement
Nathan A. Sales
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com
nsales@bancroftpllc.com

*Counsel for FirstEnergy Generation Corporation,* No. 12-1192

/s/ Katherine J. Spohn
Jon Bruning
Attorney General of the State of Nebraska
Katherine J. Spohn
Special Counsel to the Attorney General
2115 State Capitol
PO Box 98920
Lincoln, NE 68509
(402) 471-2682
Katie.spohn@nebraska.gov

*Counsel for the State of Nebraska*, No. 12-1196


/s/ Margaret I. Olson
Wayne Stenehjem
Attorney General
State of North Dakota
Margaret I. Olson
Assistant Attorney General
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
(701) 328-3640
maiolson@nd.gov

*Counsel for the State of North Dakota*, No. 12-1196

/s/ Lisa Marie Jaeger
Lisa Marie Jaeger
Sandra Y. Snyder
BRACEWELL & GIULIANI LLP
2000 K Street, N.W., Suite 500
Washington, D.C. 20006-1872
(202) 828-5800
lisa.jaeger@bgllp.com
sandra.snyder@bgllp.com

*Counsel for Edgecombe Genco, LLC
and Spruance Genco, LLC,* No. 12-1193

/s/ Steven C. Kohl
Steven C. Kohl
Eugene E. Smary
Sarah C. Lindsey
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, Michigan 48075-1318
(248) 784-5000
skohl@wnj.com

*Counsel for Wolverine Power Supply
Cooperative, Inc.,* No. 12-1195

/s/ Dale T. Vitale
Dale T. Vitale
Gregg H. Bachmann
Cameron F. Simmons
Assistant Attorneys General
Environmental Enforcement Section
30 E. Broad St., 25th floor
Columbus, OH 43215-3400
(614) 466-2766
dale.vitale@ohioattorneygeneral.gov

*Counsel for the State of Ohio,* No. 12-
1196

/s/ E. Scott Pruitt
E. Scott Pruitt
Oklahoma Attorney General
P. Clayton Eubanks
Assistant Attorney General
Public Protection Unit/Environment
Office of the Attorney General of
Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 522-8992
fc.docket@oag.ok.gov
clayton.eubanks@oag.ok.gov

*Counsel for the State of Oklahoma,* No.
12-1196

/s/ Robert M. Wolff
Steven S. Aichele
General Counsel
Robert M. Wolff
Special Counsel
Gregory E. Dunlap
Deputy General Counsel
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17120
(717) 783-6563

*Counsel for the Commonwealth of
Pennsylvania*, No. 12-1196

/s/ Mark L. Shurtleff
Mark L. Shurtleff
Utah Attorney General
350 North State Street, #230
Salt Lake City, UT 84114-2320
(801) 538-1191

*Counsel for the State of Utah*, No. 12-
1196

/s/ Silas B. Taylor
Silas B. Taylor
Senior Deputy Attorney General
Office of the Attorney General of West
Virginia
State Capitol, Room 26-E
Charleston, WV 25305
silastaylor@yahoo.com

*Counsel for the State of West Virginia*,
No. 12-1196

/s/ James Emory Smith, Jr.
Alan Wilson
Attorney General
James Emory Smith, Jr.
Assistant Deputy Attorney General
Office of the Attorney General Post
Office Box 11549
Columbia, SC 29211
(803) 734-3680
agesmith@scag.gov

*Counsel for the State of South Carolina*,
No. 12-1196

/s/ Kenneth T. Cuccinelli, II
Kenneth T. Cuccinelli, II
Attorney General of Virginia
900 East Main Street
Richmond, VA 23219
(804) 786-7240

*Counsel for the Commonwealth of
Virginia*, No. 12-1196

/s/ Jay A. Jerde
Gregory A. Phillips
Wyoming Attorney General
Jay A. Jerde
Wyoming Deputy Attorney General
Office of the Attorney General of
Wyoming
123 State Capitol
Cheyenne, WY 82002
(307) 777-7841
jay.jerde@wyo.gov

*Counsel for the State of Wyoming*, No.
12-1196

/s/ Brenna Findley
Brenna Findley
1007 East Grand Avenue
Des Moines, IA 50319
brenna.findley@iowa.gov

*Counsel for Terry E. Branstad,
Governor of the State of Iowa on behalf
of the People of Iowa*, No. 12-1196

/s/ Jack Conway
Jack Conway
Attorney General of Kentucky
700 Capital Avenue, Suite 118
Frankfort, KY 40601

*Counsel for Jack Conway, Attorney
General of Kentucky*, No. 12-1196

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 8th day of June 2012, a copy of the State,

Industry and Labor Petitioners' Motion to Govern Further Proceedings was served

electronically through the Court's CM/ECF system on all ECF-registered counsel.

<u>/s/ F. William Brownell</u>