ORAL ARGUMENT HELD DECEMBER 10, 2013
DECIDED APRIL 15, 2014

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                    )
White Stallion Energy Center, LLC, et al., )
                                    )
            Petitioners,            )
                                    )
      v.                            )   No. 12-1100
                                    )   (and consolidated cases)
United States Environmental Protection Agency, )
                                    )
            Respondent.             )
_____)

**EPA'S REPLY IN SUPPORT OF ITS MOTION TO GOVERN FUTURE PROCEEDINGS**

## INTRODUCTION

In striking contrast to the wealth of public health and environmental consequences of vacatur of the Mercury and Air Toxics Standard (the "Rule") that EPA and the State and Public Health Respondent-Intervenors identified, Joint Petitioners put forth *no demonstration* of significant harm to industry of maintaining the status quo by leaving the Rule in effect pending the Agency's action on remand. Nor do they rebut the "severe" disruptive consequences for the electric generation sector identified by Industry Respondent-Intervenors. Given this disparity, and EPA's commitment to address the Rule's limited deficiency on an expedited basis (already put into motion), the appropriate remedy under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission* is plainly remand without vacatur. 988 F.2d 146 (D.C. Cir. 1993).

Moreover, Tri-State Generation and Transmission Association Inc.'s ("Tri-State") *third* request for a stay specific to its Nucla Station is unwarranted.[1] As noted in EPA's Response to Petitioners' Motions to Govern Future Proceedings ("EPA Response"), the Agency is reviewing the request that Tri-State submitted on October 19, 2015. And the request by Utility Air Regulatory Group ("UARG") that this Court order EPA to conduct its remand proceedings under Clean Air Act ("CAA") section 307(d), 42 U.S.C. § 7607(d), is inappropriate. UARG and the rest of the public will

---

[1] Tri-State's request for the same relief for other unspecified plants is also unwarranted since the owners of those plants have not moved for relief and therefore have not justified any such relief.

1

have the opportunity to comment on the procedure, scope, and substance of EPA's proposed action on remand, and then challenge the same after EPA takes final action. This Court should remand the Rule without vacatur under its traditional application of the *Allied-Signal* factors, without limiting EPA's rulemaking discretion.

## ARGUMENT

As EPA explained in its Response, the Rule was promulgated under 42 U.S.C. § 7412(d), and thus the standard of review provided in CAA section 307(d)(9) applies here, not the one provided in section 706 of the Administrative Procedure Act. *See* 42 U.S.C. § 7607(d)(1)(last paragraph), (d)(1)(C), (d)(9). This Court has recognized that it has remedial discretion under section 307(d)(9) and has traditionally remanded deficient CAA rules without vacatur where vacatur would have significant adverse consequences for public health and the environment. *See* EPA Response 2-5. Because both *Allied-Signal* factors weigh heavily in favor of remand without vacatur, the Court should grant EPA's motion.

I.   **THE *ALLIED-SIGNAL* FACTORS WEIGH HEAVILY IN FAVOR OF REMAND WITHOUT VACATUR.**

The first *Allied-Signal* factor requires that the court consider the "seriousness of the [rule's] deficiencies" and the likelihood that the agency "chose correctly" and will thus be able to "substantiate its decision on remand." *Allied-Signal*, 988 F.2d at 150-51. Under that factor, EPA has acknowledged that, although the deficiency identified by the Supreme Court is limited, the task on remand will require more than a mere

2

clarification of the record.  *See* EPA's Motion to Govern Future Proceedings ("EPA Motion") 12.  EPA has committed to complete that task on an expedited basis and, due to the "vast amount of cost information" and "economic modeling" already in the record, has good reason to believe the Agency can remedy the error identified by the Supreme Court and reaffirm the "appropriate and necessary" finding after a consideration of cost.  *See* EPA Motion 10-12.

Contrary to Tri-State's suggestion, EPA's commitment to expedited action is not "in question."  *See* Tri-State Response to Motions to Govern ("Tri-State Response") 5-6.  In fact, EPA has already taken steps toward proposing a supplemental finding based on a consideration of cost consistent with its representation that it would complete "a proposed consideration of cost in the next few months," McCabe Decl. ¶ 19.  EPA submitted a notice outlining its proposed action on remand to the Office of Management and Budget on October 21, 2015, and regulatory review is already underway.  *See* http://www.reginfo.gov/public/do/eoDetails?rrid=125659 (showing pending regulatory review of the proposed supplemental finding).

Additionally, contrary to Joint Petitioners' and UARG's suggestion, all interested parties will have an opportunity to comment on EPA's proposed supplemental finding and submit information and data relevant to EPA's inquiry on remand during the public notice and comment period that EPA has already said will be available.  Response of Certain State and Industry Petitioners ("Joint Response") 8;

3

Response of UARG to Federal Respondent's Motion to Govern Future Proceedings ("UARG Response") 2-3, 5-7; *see also* McCabe Decl. ¶ 19; EPA Motion 12. EPA did not suggest that it would "solicit comment only on conclusions previously reached by the Agency." UARG Response 2. Nor has EPA "pre-judged" the outcome of the remand proceedings. *Id.* at 4. Instead, EPA has predicted the likelihood that it will be able to reaffirm its finding on remand under the first *Allied-Signal* factor—a reasonable prediction given the cost information already in the record, none of which was called into question in *Michigan*, and which will prevent EPA from having to "generate a new analysis out of whole cloth." *See* EPA Motion 10-12.

The second *Allied-Signal* factor requires the court to consider the "disruptive consequences" of vacatur, or a change to the status quo "that may itself be changed." *Allied-Signal*, 988 F.2d at 150-51.[2] Under this factor, EPA has identified significant

---

[2] Contrary to Joint Petitioners' argument that the second *Allied-Signal* factor is only relevant if, under the first *Allied-Signal* factor, the rule's deficiency requires "only minor adjustments to clarify [] rationale," Joint Response 9, this Court has focused on adverse consequences of vacatur even when the work to be done on remand is substantial. *See North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008); *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015). *Comcast Corp v. FCC*, cited by Joint Petitioners, Joint Response 9, is easily distinguishable from this case. *See* 579 F.3d 1, 9 (D.C. Cir. 2009). In *Comcast*, the FCC "twice tried and twice failed" to remedy the defect in the rule, leading the Court to conclude that "the [agency's] dereliction" was "particularly egregious" and unlikely to be remedied on remand. *Id.* Moreover, the Court found that vacatur would not be unduly disruptive. *See id.* Here, the Supreme Court identified a limited deficiency in the Rule and otherwise left undisturbed the remainder of this Court's decision upholding the Rule against a host of technical and legal challenges. Thus, the Rule's deficiency is far from "egregious," and EPA has demonstrated that vacatur would be significantly disruptive.

hazards to human health and the environment from hazardous air pollutant emissions from power plants, estimated significant reductions of such pollutants and others that will result from full compliance with the Rule, and identified significant quantified and unquantified benefits attributable to the control of hazardous air pollutants, including benefits associated with hazardous air pollutant emission reductions, as well as those from concomitant reductions of other air pollutants. *See* EPA Motion 13-17; EPA Response 9-13. Vacatur would diminish emission reductions that already have been achieved since the Rule's April 2015 compliance deadline, and would delay further reductions by sources that obtained extensions to April 2016. Additionally, EPA has described complications of vacatur for states that have relied on the Rule for implementation of other programs, and regulatory uncertainty for plants that have not yet installed controls but are currently under contract to do so and will be required to complete installation if EPA ultimately reaffirms the Rule on remand. *See* EPA Motion 17, 20 n.8; EPA Response 13-15.

  In response, neither Joint Petitioners nor any other industry petitioner has identified any significant burden of maintaining the status quo while EPA takes action over the next several months. (Most industry petitioners did not even file a motion seeking vacatur.) Instead, Joint Petitioners and UARG attack what they anticipate will be the substance of EPA's consideration of cost in determining whether to alter its finding that it is appropriate to regulate hazardous air pollutant emissions from power plants. *See* Joint Petitioners' Response 6-8; UARG Response 4-5.

EPA has not taken final action relying on any particular consideration of cost to determine whether to affirm the finding—EPA has not yet even issued a proposed finding. And in *Michigan*, the Supreme Court refused to limit EPA's discretion as to how to consider costs on remand. *See Michigan v. EPA*, 135 S. Ct. 2699, 2711 (June 29, 2015). Joint Petitioners and UARG will have the opportunity to comment on EPA's proposed approach and challenge its final determination if EPA concludes that regulation of power plants remains appropriate after considering cost. Joint Petitioners' and UARG's arguments are not ripe for review at this time, nor are they relevant to the Court's inquiry under the second *Allied-Signal* factor. Regardless of the type of cost consideration EPA undertakes for the "appropriate and necessary" finding, the Rule in effect today obtains significant quantifiable and unquantifiable benefits directly related to the reduction of hazardous air pollutants and quantifiable benefits from the concomitant reductions of other air pollutants that occur when hazardous air pollutants are controlled. Thus, vacatur would have significant "disruptive consequences" for public health and the environment by reducing and delaying those benefits. *See* EPA Motion 13-17; EPA Response 9-13.

Moreover, Joint Petitioners' criticism of EPA's arguments with respect to state reliance on the Rule for implementation of other programs is without merit. First, North Carolina's demonstration of *attainment* of the 2008 8-Hour Ozone National Ambient Air Quality Standard may have been based on ozone levels in 2012 to 2014, but its *maintenance* demonstration for the Standard (required for redesignation)

specifically incorporated the Rule's projected reductions into its future emissions inventories, demonstrating maintenance of the Standard ten years into the future. *See* McCabe Decl., Att. I (discussing future emissions estimates); Joint Response, Ex. 1 at iv (stating that "federal actions [including the Rule] have resulted in lower emissions through the eastern portion of the country") and v (stating that "the maintenance demonstration shows that future emission inventories are expected to be lower than the attainment year inventory through the implementation of various federal and state control measures").

With respect to state reliance on the Rule for the 2010 1-Hour $SO_2$ Primary National Ambient Air Quality Standard, states were specifically encouraged to rely on $SO_2$ reductions resulting from compliance with the Rule in developing their attainment and maintenance plans for the Standard. *See, e.g.,* 80 Fed. Reg. 51,051, 51,077-78 (Aug. 21, 2015). When promulgating the $SO_2$ Standard in 2010, EPA said that national rules were expected to lead to $SO_2$ reductions that would help achieve compliance with the Standard. *See* 75 Fed. Reg. 35,520, 35,553 (June 22, 2010). Most states have not yet submitted implementation plans for the Standard, and therefore their reliance on $SO_2$ reductions from the Rule for creation of those plans is ongoing.

Finally, with respect to state reliance on the Rule for purposes of setting mercury budgets for waterbodies, the 2007 Northeast States Regional Mercury TMDL document cited by EPA specifically anticipates regulation of mercury-emitting sources under CAA section 7412(d) in order for states to meet the budget. *See, e.g.,* McCabe

7

Decl., Att. J at xii.[3] For northeast states that are suffering the public health and environmental consequences of mercury emissions, this Rule *is* the national program required to achieve the mercury budget set in 2007. *See* Comments on Proposed Rule from the Northeast States for Coordinated Air Use Management, Att. K at 4.[4] Thus, vacatur of the Rule would in fact have significant consequences for public health and the environment beyond those directly related to the Rule.

In summary, both *Allied-Signal* factors weigh heavily in favor of remand without vacatur. EPA has committed to act quickly to address the Rule's limited deficiency and has made a reasonable prediction based on cost information already in the record that it will likely reaffirm the "appropriate and necessary" finding on remand. Moreover, no petitioner has demonstrated any significant harm to industry of maintaining the status quo, while EPA and Respondent-Intervenors have pointed to

---

[3] Attachment J states, "To meet out-of-region goals, Northeast states recommend EPA implement plant-specific MACT limits for mercury under Section 112(d) of the Clean Air Act to control power plant emissions by 90 percent by cost-effective and available technologies. The Northeast region's ability to achieve the calculated TMDL allocations is dependent on the adoption and effective implementation of national and international programs to achieve necessary reductions in mercury emissions."

[4] Attachment K states, "[T]ransported mercury emissions from out-of-region coal-fired [power plants] are a major contributor to mercury deposition in the Northeast. Based on an EPA-sponsored modeling analysis, [Northeast states] concluded that much of the mercury entering the Northeast's aquatic ecosystems is deposited from the air, and a significant portion of this mercury comes from emission sources outside the [Northeast] region. . . . In order for the Northeast states to achieve their mercury TMDL targets, mercury deposited from the air may need to be reduced in the range of 87 to 98 percent."

numerous disruptive consequences of vacatur. Accordingly, the Court should remand the Rule without vacatur.

## II.   THE REQUESTS FOR OTHER RELIEF ARE UNWARRANTED.

Tri-State continues to press its request for a stay of the Rule as it applies to Nucla Station, stating that none of the motions to govern argue that such a stay would cause harm. *See* Tri-State Response 4. EPA already responded to that contention in response to Tri-State's two prior emergency motions. *See* DN 1567031 ("EPA Opp. to First Emergency Motion") 15-16; DN 1570353 ("EPA Opp. to Second Emergency Motion") 18-20. Emissions of hydrochloric acid from Nucla Station beyond its current April 2016 deadline will in fact cause harm. *See id.* EPA has a process in place for balancing those harms against the reliability concerns that Tri-State has identified. That process is ongoing and unless and until Tri-State's relief is denied, this Court should not entertain Tri-State's third request for relief. *See* D.C. Circuit Rule 18(a)(1); EPA Opp. to First Emergency Motion 9-10; EPA Opp. to Second Emergency Motion 9-13. Just as the Court already denied Tri-State's second request for emergency relief "without prejudice to Tri-State filing a motion should administrative relief be denied," DN 1570784, the Court should again deny Tri-State's premature motion for alternative relief here.

Finally, in response to EPA's motion, UARG requests that the Court "declare that EPA must undertake § 307(d) notice-and-comment rulemaking on remand . . . ."

UARG Response 7.[5]  UARG contends that such a declaration is necessary to ensure that EPA "explores every aspect of EPA's § 112 authority to regulate [power plants] under 112(n)(1)(A) . . . ."  *Id.*  However, "[o]nly in extraordinary circumstances do [courts] issue detailed remedial orders." *N.C. Fisheries Ass'n v. Gutierrez,* 550 F.3d 16, 20 (D.C. Cir. 2008); *see also PPG Indus. v. U.S.,* 52 F.3d 363, 365 (D.C. Cir. 1995) ("under settled principles of administrative law," the court's inquiry ends after it has identified an error of law).  No extraordinary circumstances are present here.  As already described, UARG will have an opportunity to comment on EPA's proposed action—including procedure, scope, and substance—and then to challenge the final action at the appropriate time.  Thus, no declaration mandating a specific type of rulemaking is necessary to protect UARG's interests, nor is it an appropriate use of the Court's remedial discretion.  Accordingly, Tri-State's third request for a stay and UARG's request for a specific remand instruction should be denied.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in EPA's Motion and Response, remand without vacatur is warranted.  No other alternative relief should be granted.

---

[5] UARG could have, but did not, request this relief in a motion to govern future proceedings.  Nor did UARG properly file a motion for affirmative relief under Fed. R. App. P. 27(a)(3)(B) and Circuit Rule 27(c).  For these reasons, UARG's request should be denied out of hand.

DATED: November 4, 2015     Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Stephanie J. Talbert*
ERIC G. HOSTETLER
STEPHANIE J. TALBERT
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
303-844-7231
E-mail:     stephanie.talbert@usdoj.gov

*Counsel for Respondents*

OF COUNSEL
SONJA RODMAN
KAYTRUE TING
U.S. Environmental Protection
      Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

11

# CERTIFICATE OF SERVICE

      I hereby certify that I served a copy of EPA'S REPLY IN SUPPORT OF ITS MOTION TO GOVERN FUTURE PROCEEDINGS via Notice of Docket Activity by the Court's CM/ECF system, on November 4, 2015, on all counsel of record.

DATED: November 4, 2015        JOHN C. CRUDEN
                                          Assistant Attorney General
                                          Environment and Natural Resources Division

                                          */s/ Stephanie J. Talbert*
                                          ERIC G. HOSTETLER
                                          STEPHANIE J. TALBERT
                                          United States Department of Justice
                                          Environment and Natural Resources Division
                                          Environmental Defense Section
                                          999 18th Street
                                          South Terrace, Suite 370
                                          Denver, CO 80202
                                          303-844-7231
                                          E-mail:       stephanie.talbert@usdoj.gov

                                          *Counsel for Respondents*